545 S.E.2d 830

**Peggy H. EADDY, n/k/a Peggy H. Oliver, Respondent,**

v.

**Peter G. OLIVER, Appellant.**

No. 3312.

Court of Appeals of South Carolina.

Heard Feb. 7, 2001.
Decided March 5, 2001.
Rehearing Denied May 21, 2001.
Certiorari Denied Sept. 13, 2001.

40

Kermit S. King and Heather S. Tolar, both of King & Vernon, of Columbia, for appellant.

J. Mark Taylor and C. Vance Stricklin, Jr., both of Wilson, Moore, Taylor & Thomas, of West Columbia, for respondent.

SHULER, Judge:

Peter G. Oliver filed this contempt action against his ex-wife, Peggy H. Eaddy, alleging she violated the terms of a family court visitation order. The family court found no evidence of a willful violation and declined to hold Eaddy in contempt. Oliver appeals. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Oliver and Eaddy married in 1970. On November 21, 1995, the family court granted a divorce on the ground of one year's continuous separation. The final decree gave Eaddy sole custody of the parties' minor son Fred, then eleven years old, and awarded Oliver visitation on alternating weekends and part of the Thanksgiving and Christmas holidays. The order further provided visitation as agreed upon for other holidays and extended summer visitation; if unable to agree, either party could move the court to decide the issue. Neither party appealed this order.

In June 1997 Eaddy remarried and relocated to Myrtle Beach. Following the move, Eaddy and Oliver agreed to share transportation responsibility to facilitate visitation. On June 25 Oliver's attorney wrote Eaddy requesting a two-week visitation with Fred during the summer months. The letter encouraged Eaddy to negotiate the matter to avoid a court hearing. According to Oliver, Eaddy replied in a letter dated June 29, 1997. Therein, Eaddy stated she had discussed the matter with their son, but that Fred did not want to stay with his father for a two-week period. As a result, no extended visitation occurred during the summer of 1997.

In April 1998 Oliver's counsel wrote to Eaddy expressing his belief that the 1997 visitation problems had been resolved and reaffirming Oliver's desire to reach an agreement regarding his alternating weekend and 1998 summer visitation with Fred. Eaddy refused to cooperate, and Oliver filed an ex parte motion on September 15, 1998 seeking an order and rule to show cause why Eaddy should not be held in contempt for failure to comply with the visitation provisions of the family court's prior order.

After an unsuccessful mediation attempt, the family court held a hearing in June 1999. By order filed August 17, 1999, the court declined to find Eaddy in contempt and dismissed the rule. The court also found Eaddy was entitled to attorney's fees, but did not require Oliver to pay them due to his precarious physical and financial health. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this Court has the "authority to find facts in accordance with our own view of the

preponderance of evidence." *Owens v. Owens*, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct.App.1996). Although a determination of contempt is within the trial court's discretion, an order refusing to hold a party in contempt "should be reversed when the holding is based on a finding that is without evidentiary support or when there is . . . an abuse of discretion." *Means v. Means*, 277 S.C. 428, 431, 288 S.E.2d 811, 812–13 (1982).

## LAW/ANALYSIS

### I. Failure to Find Eaddy in Contempt

Oliver first argues the family court erred in failing to find Eaddy in contempt of the prior order regarding visitation. We agree.

■ "An adult who wilfully violates, neglects, or refuses to obey or perform a lawful order of the court . . . may be proceeded against for contempt of court." S.C.Code Ann. § 20–7–1350 (Supp.2000). For purposes of contempt, "[a]n act is willful if 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Wilson v. Walker*, 340 S.C. 531, 538, 532 S.E.2d 19, 22 (Ct.App.2000) (quoting *Spartanburg County Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988)).

■ Before a party may be held in contempt "the record must clearly and specifically reflect the contemptuous conduct." *Henderson v. Henderson*, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989). Once the movant makes a prima facie showing by pleading an order and demonstrating noncompliance, "the burden shifts to the respondent to establish his defense and inability to comply." *Id.; see also Lindsay v. Lindsay*, 328 S.C. 329, 338, 491 S.E.2d 583, 588 (Ct.App.1997) ("[T]he moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order.").

■ Oliver contends he made a prima facie case for contempt by producing the order and testifying as to Eaddy's

noncompliance, and claims the burden then shifted to Eaddy to provide a defense or explanation for noncompliance. He specifically asserts Eaddy did not meet this burden because she failed to testify or present any evidence in response. We agree.

In support of his motion, Oliver testified to ongoing problems with Eaddy in arranging visitation, and stated there had been periods of several months when he did not see his son. He related that plans were made for Fred without his knowledge and that Fred went on other social outings instead of coming to visit him as provided in the order. Oliver enumerated his continuing problems scheduling visits, in particular Eaddy's refusal to cooperate or keep him informed about Fred. Oliver further testified that he had tried several times to discuss his lack of visitation with Eaddy; he claimed Eaddy responded by telling him Fred did not want to see him, hanging up the phone, and refusing to answer letters from his attorney.

In particular, Oliver asserted there were several weekends in 1998 when Fred did not come for his regular weekend visitation, including spring break, Easter, April 15–17, April 24–26, May 8–10, and May 22–24. Although Oliver admitted the problems with visitation initially were better after the mediation, he stated they worsened again when Eaddy gave Fred a pick-up truck in the spring of 1999. According to Oliver, he has not seen his son since.

We agree with Oliver that this evidence constituted a prima facie showing of contempt. Indeed, the family court stated that "it is undisputed perhaps that [Oliver] hasn't had visitation according to the order." Thus, upon presentation of his case, the burden shifted to Eaddy to produce at least some evidence tending to establish a defense or explanation for failing to comply with the family court order. Because Eaddy chose to produce *no* evidence, including her own testimony, we find she did not meet this burden. As a result, the family court abused its discretion in refusing to hold her in contempt. We therefore remand the case to the family court for a determination on the propriety of appropriate sanctions. *See Lindsay,* 328 S.C. at 338, 491 S.E.2d at 588 ("Even though a party is found to have violated a court order, the question of

whether or not to impose sanctions remains a matter for the court's discretion."); *Sutton v. Sutton,* 291 S.C. 401, 409, 353 S.E.2d 884, 888–89 (Ct.App.1987) ("Although the Family Court is empowered to find and punish for contempt, there is no requirement that sanctions be imposed upon a finding of contempt.").

## II.  Failure to Order Future Compliance

■  Oliver next contends the family court erred in failing to direct Eaddy to comply prospectively with the court's prior order on visitation.  The record reflects Oliver first raised this issue in a motion to alter or amend the judgment; it is therefore not preserved for our review.  *See Patterson v. Reid,* 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.").  Moreover, although the family court denied the post-trial motion, the court's order stated: "Even though it is not incumbent upon the Court to remind parties to abide by existing court orders, both parties are admonished to uphold all prior orders as specifically set forth therein."  In our view this issue is meritless, as the parties were, in fact, admonished to obey all prior orders.

## III.  Attorney's Fees and Costs

Finally, Oliver argues the family court erred in failing to award him attorney's fees and costs.  In light of our decision to reverse the family court's finding on contempt, we similarly reverse the award of attorney's fees to Eaddy and remand the issue for reconsideration along with the determination on sanctions.  *See Sexton v. Sexton,* 310 S.C. 501, 427 S.E.2d 665 (1993) (reversing and remanding issue of attorney's fees for reconsideration where the substantive results achieved by trial counsel were reversed on appeal).

**REVERSED AND REMANDED.**

HEARN, C.J., and CURETON, J., concur.